UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| GINA C. HANCHETT, | § | |
| | § | |
| Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. 4:11-CV-1695 |
| | § | |
| PORT OF HOUSTON AUTHORITY, *et al*, | § | |
| | § | |
| Defendants. | § | |

### OPINION AND ORDER

Pending before the Court is the Motion for Summary Judgment (Doc. 24) filed by Defendant International Longshoreman's Association Local No. 28 ("Defendant" or "Local 28" or "the Union") against all claims made by Plaintiff Gina C. Hanchett ("Plaintiff" or "Hanchett").  Upon review and consideration of this motion, the facts in the record, and the applicable law, the Court concludes that the case should be stayed pending resolution of Plaintiff's claims pursuant to the mandatory arbitration procedure prescribed by the International Longshoreman Association's ("ILA") collective bargaining agreement.

### I.      Background

Hanchett initiated this suit against her employer, the Port of Houston Authority (POHA), and the union of which she was a member, Local 28, asserting claims of sexual harassment and retaliation under Title VII of the Civil Rights Act of 1964, codified at 42 U.S.C. § 2000e *et. seq.* ("Title VII") (Compl. ¶¶ 6.1-7.4, Doc. 1).  Hanchett has since dismissed the POHA with prejudice.  Pl. Motion to Dismiss Def. the Port of Houston Authority, Doc. 22.  Hanchett continues to pursue her claims against Local 28.

At the time of the events in question, Hanchett worked as a trucker driver at the POHA. Pl.'s Resp. to Def.'s Mot. for Summ. J. at 1, Doc. 29.  Every day that Hanchett came to work, she reported to the "Hiring Hall" of Local 28 where she would then be "dispatched" to a job with one of several employers operating at the port, or sometimes to the POHA itself.  Doc. 29 at 1. According to her complaint, the alleged harassment began the week of August 9, 2010, and continued on a regular basis for the duration of her employment at the Port.  Doc. 1 ¶ 5.3; Doc. 29 at 11, 16.  She avers that all of the perpetrators of the allegedly harassing, discriminatory, and retaliatory conduct against her were members of Local 28 and that some incidents occurred on Local 28 property.  Doc. 1 ¶ 5.2; Doc. 29 at 4 n.1.

In support of her claim of sexual harassment, Hanchett alleges numerous instances of physical and verbal harassment.  Incidents of physical harassment included unwanted touching by male coworkers such as hugging (Doc. 1 ¶ 5.3; Doc. 29 at 11) and touching of her buttocks and legs (Doc. 29 at 10).  She also alleges that male coworkers frequently made harassing comments, including remarks about Plaintiff's body and direct propositions for sex, and as well as vulgar jokes of a sexual nature.  Doc. 29 at 11.  Hanchett cites to one harassing event in particular that occurred while she was in the Union "Hiring Hall" when two male union members made pelvic thrusts at her.  Doc. 29 at 11.  The harassment, she states, was "so frequent and pervasive" that she cannot remember every incident.  Doc. 29 at 10.

Hanchett filed numerous complaints regarding these instances of sexual harassment with Local 28 and with the supervisors at her employment sites.  Doc. 1 ¶ 5.3, 5.4, 5.7, 5.8, 5.9. According to Hanchett, no action was ever taken to stop the harassment.  Doc. 1 ¶ 5.3, 5.4.  To support her claim of retaliation, Hanchett alleges that after she lodged her complaints, she was treated less favorably in terms of her union membership.  For example, at the Union "Hiring

Hall," on approximately seven or eight occasions, she arrived first for work, but other members were called for jobs before her.  Doc. 29 at 13.  In some cases, she received less than a full-day of work or no work at all.  Doc. 29 at 13.  Also, other union members employed at her various job sites "assigned [] bad vehicles [to her] that impeded [her] ability to do [her] job."  Doc. 29 at 13.  After Hanchett initiated her complaint with the EEOC, former Local 28 president Alan Robb allegedly told her that "the Local didn't need the EEOC bothering them and [Hanchett] would regret [having filed an EEOC complaint]."  Doc. 29 at 15.

Hanchett also claims that after she filed her complaints, the sexual harassment became more severe, both in terms of "frequency and crudeness."  Doc. 29 at 13.  In one instance, a male maintenance worker entered the women's restroom while she was changing and refused to leave.  Doc. 1 ¶ 5.7; Doc. 29 at 14.  She was also harassed in a nonsexual manner when multiple employees made comments about her repeated complaints over the on-site radio.  Doc. 1 ¶ 5.4; Doc. 29 at 14.  Additionally, Hanchett alleges other instances where employees or other union members tried to frighten and intimidate her.  A bus driver at the Bayport Container Terminal nearly ran Hanchett over with his bus.  Doc. 1 ¶ 5.9.  A man named "Bobby" rammed Hanchett's truck with his van.  Doc. 29 at 13.  A man named "Al" drove his vehicle "up close" to Hanchett's.  Doc. 29 at 14.  A driver named David White "made a 'shame on you' gesture with his fingers, then dropped an enormous box right next to [Hanchett]."  Doc. 29 at 14.  Plaintiff loosely connects the allegedly retaliatory conduct to her complaints with the Union and the EEOC on the basis of "temporal proximity."  Doc. 29 at 15.

On January 15, 2013, Local 28 filed its motion to dismiss Hanchett's claims on several grounds, the most prominent of which was that a labor organization cannot held liable under Title VII for claims of sexual harassment.  Doc. 24 at 10-12.  In her reply to Defendant's motion,

Hanchett countered that even though the Fifth Circuit has not yet considered the issue, some courts have imposed union liability for discrimination under Title VII.  *See e.g., Howard v. Int'l Molders & Allied Workers Union*, 779 F.2d 1546, 1533 (11th Cir. 1986) (finding union liability for discrimination under Title VII where the union failed to use all reasonable efforts to cause the employer to cease using non-validated tests for promotion); *Romero v. Union Pac. R.R.*, 615 F.2d 1303, 1311 (10th Cir. 1980) (reversing grant of summary judgment where the record created issues of fact as to union's involvement in alleged national origin discrimination).  Doc. 29 at 2-3.  Therefore, she claims, Local 28 may be liable under either an "acquiescence" theory or under a "totality of the circumstances" analysis since union members themselves were the perpetrators of the alleged conduct and, on at least one occasion, the conduct occurred on Local 28 property.  Doc. 29 at 5.  Additionally, she states, Local 28 adopted a sexual harassment policy as part of its collective bargaining agreement ("CBA").  Doc. 29 at 5; ILA Local #28 Sexual Harassment Policy, Doc. 29-3.  This policy, she says, delegated responsibility to the Union to investigate and discipline allegations of sexual harassment.  Doc. 29 at 7; Doc. 29-3 at 5.

Local 28 filed its reply and indicated that if its motion for summary judgment is not successful, it will invoke its right to resolve Hanchett's claims through the mandatory grievance and arbitration procedure outlined in the CBA between the employment association (the Gulf Maritime Association) and the ILA.  Doc. 33 at 6-7 n.8.  Multiple surreplies ensured.[12]  Hanchett argues that Local 28 "must either invoke its right to arbitration (if it exists) or waive it."  Local

---

[1] The relevant filings include the following:
- Plaintiff's Response to Defendant's Motion to Dismiss (Doc. 29)
- Defendant's Reply to Plaintiff's Response to its Motion for Summary Judgment (Doc. 33)
- Plaintiff's Surreply in Opposition to Defendant's Motion for Summary Judgment (Doc. 35)
- Defendant's Reply to Plaintiff's Surreply in Opposition to Defendant's Motion for Summary Judgment (Doc. 36)
- Plaintiff's Second Surreply to Defendant's Motion for Summary Judgment (Doc. 37)

[2] "Neither the local rules of this Court, nor the Federal Rules of Civil Procedure allow a party to file a surreply as a matter of right."  *Mize v. Quarterman*, No. H-07-5307, 2010 WL 644844, at * 4 (S.D. Tex. 2010).  Nevertheless, the Court considers these additional documents for the important new issues they raise.

28 maintains that it does not yet need to invoke its right to arbitrate because it is entitled to summary judgment since Hanchett cannot maintain her sexual harassment claim against a union as a matter of law.  Doc. 36 ¶ 1.  Local 28 cannot have it both ways.  It is well established in this Circuit that "a party waives arbitration by seeking a decision on the merits before attempting to arbitrate."  *In re Mirant Corp.*, 613 F.3d 584, 589 (5th Cir. 2010) (citing *Petroleum Pipe Ams. Corp. v. Jindal Saw, Ltd.*, 575 F.3d 476, 480 (5th Cir. 2009).   A determination of whether Hanchett can maintain a Title VII sexual harassment claim against Local 28 necessarily comprehends the merits of this case.   Accordingly, the Court considers only whether the arbitration clause in the CBA is binding and enforceable against Hanchett.


## II.    Legal Standard

"Arbitration is a matter of contract between the parties, and a court cannot compel a party to arbitrate a dispute unless the court determines the parties agreed to arbitrate the dispute in question."  *Pennzoil Exploration and Prod. Co. v. Ramco Energy Ltd.*, 139 F.3d 1061, 1064-65 (5th Cir. 1998) (citing *AT&T Tech., Inc. v. Commc'n Workers*, 475 U.S. 643, 648 (1986)).  In order to determine whether the parties have agreed to arbitrate a particular dispute, the court considers: "(1) whether a valid agreement to arbitrate between the parties exists; and (2) whether the dispute in question falls within the scope of that arbitration agreement."  *Id.*  In making this determination, courts must avoid consideration of the merits of the grievance.  *Oil, Chem. & Atomic Workers' Int'l Union, Local 4–447 v. Chevron Chem. Co.*, 815 F.2d 338, 343 (5th Cir. 1987).  Any doubts should be resolved in favor of arbitrability.  *Id.* at 340.  A valid agreement to arbitrate applies to any claims unless it is certain "'that [the] arbitration clause is not susceptible of an interpretation which would cover the dispute at issue.'"  *Pers. Sec. & Safety Sys. Inc. v.*

*Motorola,* 297 F.3d 388, 392 (5th Cir.2002) (quoting *Neal v. Hardee's Food Sys., Inc.,* 918 F.2d

34, 37 (5th Cir. 1990)) (alteration in original).

### III.         Discussion

First, the Court examines whether Local 28 and Hanchett are proper parties to the CBA.

It is well established that "an employee who claims that his employer violated a collective

bargaining agreement is bound by the terms of the agreement for its enforcement." *Vaca v. Sipes,*

386 U.S. 171, 184, 87 S.Ct. 903, 913, 17 L.Ed.2d 842 (1967); *Harris v. Chemical Leaman Tank*

*Lines, Inc.,* 437 F.2d 167, 170 (5th Cir.1971).  Local 28 asserts that since Hanchett's claim for

union liability under Title VII hinges on the CBA, her claim must be subject to resolution under

the same agreement.  Doc. 36 ¶ 4.  Hanchett disputes this by stating that she "does not claim that

her right to recovery arises under the CBA . . . [it] arises under Title VII."  The Court is not

persuaded.  In Hanchett's response to Local 28's motion for summary judgment, she relies on the

following footnote in *EEOC v. Pipefitters Ass'n Local 597*, 334 F.3d 656, 660-661 n.6 (7th Cir.

2003), to distinguish that court's holding that a union did not have an affirmative duty to prevent

harassment or discrimination in the workplace:

> "Imposing such a duty would make for factually messy cases because the union's
> power is so much more limited than the employer's when it comes to making
> changes in personnel or work  rules. (**More precisely, because, so far as the
> evidence suggests, *this* union's power over personnel and work rules is so
> much more limited than the employer's; other unions, operating under other
> collective bargaining agreements, might be delegated additional powers that
> would alter the analysis in this opinion**.)"  Doc. 29 at 3 (bolded font in original).

Hanchett goes on to state that liability should exist in this case because "even under the

most restrictive view (*Pipefitters*) the Court must analyze the powers of the union and the

realities of the workplace."  Doc. 29 at 4.  She summarizes her response by stating, "the Local

not only had the power to address sexual harassment, but in fact the collective bargaining agreement established the Local as the appropriate entity to deal with such issues." Doc. 29 at 6. At Defendant pointed out, Hanchett's reliance on the CBA is plainly an attempt to shoehorn her claims into the dicta of *Pipefitters*. Because her argument for Title VII sexual harassment liability is premised on Local 28's failure to enforce the policies of the CBA[3], she is presumed to be a party to the CBA.

Next, the Court considers whether the Hanchett's claims fall within the scope of the arbitration agreement. According to Local 28, the CBA's grievance and arbitration procedure is outlined in two documents: 1) the Memorandum of Understanding (Doc. 36-8 at 1-3); and 2) the Grievance and Arbitration Procedure (Doc. 36-8 at 3-5). Both the Memorandum of Understanding and the Grievance and Arbitration Procedure define the scope of the procedure to include "*any* complaint that there has been a violation of *any* employment law…" Doc. 36-8 at 1, 3 (emphasis supplied). This language does not distinguish between disputes among union members and employers or union members and the union, and appears to state that all claims are subject to arbitration. The language in Step 1 of the Grievance and Arbitration Procedure does distinguish the type of claim. Step 1 provides:

> "A worker must make a request for a Step 1 hearing through their ILA Local …If a worker has a statutory employment law claim that includes a claim against another worker or against the union, the worker may make the request for a Step 1, Step 2, and arbitration directly to the West Gulf Maritime Association, and may proceed independently of their ILA local at the Step 1, Step 2, and arbitration proceedings." Doc. 36-8 at 4.

Hanchett claims that this language makes it unclear whether the arbitration procedure applies to her claims since the only language in either the Memorandum of Understanding or the

---

[3] In her second surreply, Hanchett adds an additional claim for breach of the duty of fair representation in connection with sexual harassment complaints for the Union's alleged failure to notify union members about the grievance procedures. Doc. 37 at 3-5.

Grievance and Arbitration Procedure that specifically addresses claims by a union member against a union uses the permissive "may," and not the mandatory "shall" as in the case of a labor-management dispute.  Doc. 37 at 2.

Reading the permissive language of Step 1 in context does not contradict the mandatory language found earlier under the "Scope" section of the procedure.  Step 1 simply provides an alternative procedure for union members to follow when bringing complaints directly against the union.  This language does not take complaints by union members against the union out of the realm of "mandatory arbitration."   The Court views any ambiguity in the Grievance and Arbitration Procedure as very minimal, and resolves any ambiguity in favor of arbitrability.[4]  The arbitration clause is susceptible to an interpretation that would cover Hanchett's claims. Therefore, without reaching the merits of the case in any way, including whether or not Plaintiff may maintain a Title VII cause of action for sexual harassment against Local 28, the Court stays the case pending resolution of these claims by an arbitrator in accordance with the grievance and arbitration provision outlined in the CBA.

IV.    Conclusion

For the foregoing reasons, it is hereby

**ORDERED** that the case is stayed pending resolution of Hanchett's claims pursuant to the grievance and arbitration procedure outlined in International Longshoreman's Association Local No. 28's collective bargaining agreement.

---

[4] Although the Court does not look outside the four corners of the Memorandum of Understanding and the Grievance and Arbitration Procedure in making its determination, this interpretation is supported by the Memorandum on Sexual Harassment/Discrimination from the president of the South Atlantic & Gulf Coast District of the ILA to the Union members, which states, "if voluntary resolution [of a sexual harassment complaint] cannot be reached, you will be notified and advised of your right to file a grievance under the grievance and arbitration procedure set forth in the WGMA collective bargaining agreement.  THIS IS THE SOLE REMEDY FOR SUCH COMPLAINTS." International Longshoreman's Association Memorandum  re: Sexual Harassment/Discrimination, Doc. 35-1 (caps in original).

SIGNED at Houston, Texas, this 30th day of September, 2013.

MELINDA HARMON
UNITED STATES DISTRICT JUDGE